**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | : | ID No. 2210012695 |
| | : | |
| v. | : | |
| | : | |
| ROBERT W. DRAPER, | : | |
| | : | |
| Defendant. | : | |

Submitted: November 11, 2024
Decided:   January 9, 2025

## ORDER

On this 9th day of January 2025, upon consideration of Defendant Robert Draper's motion for postconviction relief, the Commissioner's Report and Recommendation (the "Report"), and the record in this case, it appears that:

1.      On March 9, 2023, Mr. Draper pled guilty to one count of Possession of a Firearm by a Person Prohibited, 11 *Del. C.* § 1448. In his plea agreement with the State, the parties jointly recommended that he serve an unsuspended ten years of incarceration, followed by decreasing levels of probation. Pursuant to the agreement, the State further agreed to refrain from filing a habitual offender petition. The parties agreed that Mr. Draper's conviction of the lead charge would have required a thirty-year minimum mandatory unsuspended sentence if the State opted to file such a petition. After the Court conducted a full colloquy, it accepted the plea and sentenced Mr. Draper consistently with the joint recommendation.

2.      Mr. Draper filed no direct appeal after his guilty plea. Rather, he filed

a motion, *pro se*, seeking postconviction relief pursuant to Superior Court Criminal Rule 61. The Court then referred the matter to a Superior Court commissioner for findings of fact and recommendations as permitted by 10 *Del. C.* § 512(b) and Superior Court Criminal Rule 62 (a)(5).

3. After considering the parties' positions, the Commissioner issued her findings and recommendations in her Report attached as Exhibit A. In her Report, she explained (1) why Mr. Draper failed to demonstrate that his counsel performed ineffectively before or during his guilty plea and sentencing, (2) why he failed to demonstrate any concrete prejudice, and (3) why his remaining grounds for relief had no merit. The Commissioner conducted a complete review of the record and found that Mr. Draper's counsel provided competent representation, that he suffered no prejudice, and that he entered his plea knowingly, intelligently, and voluntarily. Accordingly, she recommended that the Court deny Mr. Draper's motion for postconviction relief.

4. Mr. Draper did not appeal the Report within ten days as permitted by Delaware Superior Court Criminal Rule 62(a)(5)(ii).[1] As a result, the Court adopts the Report in its entirety given Mr. Draper's failure to file an appeal. Furthermore, the recommendations in the Report are well-reasoned and adequately supported by the record.

**NOW, THEREFORE**, for the reasons stated in the Commissioner's Report and Recommendation filed on October 28, 2024:

**IT IS HEREBY ORDERED** that the Court adopts the Commissioner's Report and Recommendation attached as Exhibit A in its entirety. Mr. Draper's

---

[1] The Commissioner filed her Report on October 28, 2024. The Court deems the matter submitted for decision after expiration of the ten-day appeal deadline, which ran on November 11, 2024.

motion for postconviction relief filed pursuant to Superior Court Criminal Rule 61 is therefore **DENIED**.

/s/Jeffrey J Clark
Resident Judge

JJC/klc
oc: Prothonotary
cc: The Honorable Andrea M. Freud
 Mr. Robert Draper, Pro Se
 Trial Counsel

# Exhibit A

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | : | ID No. 2210012695 |
| | : | |
| v. | : | |
| | : | |
| | : | IK-22-11-0266-01 – PFBPP PABPP |
| ROBERT W. DRAPER, | : | |
| SBI # 00186606 | : | |
| | : | |
| Defendant. | | |

**COMMISSIONER'S REPORT AND RECOMMENDATION**

**Upon Defendant's Motion for Postconviction Relief
Pursuant To Superior Court Criminal Rule 61**

Stephen Welch, Esq., Department of Justice for *State of Delaware*

Robert W. Draper, *pro se*

FREUD, Commissioner
October 25, 2024

The defendant, Robert W. Draper., ("Draper") pled guilty, pre-indictment, on March 9, 2023, to one count of Possession of a Firearm by a Person Prohibited (PFBPP) 11 Del. C. § 1448. He was also charged with a second count of PFBPP, two counts of Receiving Stolen Firearms, and three counts of Receiving Stolen Property. As part of the plea deal, the State agreed to enter a *nolle prosequis* on the remaining charges, and not file a motion to declare Draper a habitual offender. The State also agreed to recommend fifteen years incarceration, suspended after ten years minimum mandatory, for varying levels of probation. Had Draper gone to trial and been found guilty as charged, he faced over 30 years of minimum mandatory jail time and the possibility of life in prison as a habitual offender. The Court agreed with the sentence recommendation of the parties and sentenced Draper accordingly.

Draper did not appeal his conviction to the State Supreme Court. Draper filed the pending Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61, on January 23, 2024, in which he alleges, in part, ineffective assistant of Counsel.

**FACTS**

According to the Affidavit of Probable Cause, on October 15, 2022, at approximately 12:48 pm the Delaware State Police dispatched Corporal Myer to the Royal Farms on North Dupont Highway in Dover, Delaware concerning a possible stolen vehicle. The stolen vehicle was a 1997 Chevrolet Silverado, owned by John Brown and stolen from his house in Caroline County, Maryland Additionally two firearms and other items that had also been stolen from inside Mr. Brown's residence at the same time as the vehicle theft. At the time Corporal Myer was dispatched, John Kinard, an employee of the victim John Brown, was watching the stolen Silverado at the Royal Farms and called the State Police to inform them that the stolen vehicle had been located.

6

Corporal Myers made a Felony related stop of the Silverado as it was exiting the Royal Farms. The vehicle was a positivity identified by a computer check as being the same vehicle reported as stolen from Caroline County, Maryland. Inside the vehicle two firearms, a Remington 870 shotgun and a Remington 597.22, reported as stolen were found, along with several other items that had also been reported stolen from victim Brown.

At the time of the stop Judy Goddard was the sole occupant of the Silverado. Ms. Goddard was transported to Delaware State Police Troop 9 and Lieutenant Baker from Caroline County police came to Troop 9 to interview her. During the interview Goddard explained that she was living at the Dover Inn, in Dover, Delaware, and was in a relationship with Draper.

On October 27, 2022, Detective Scott of the Delaware State Police was provided with surveillance video from Dover Inn which showed the stolen Silverado pulling up in front of the Dover Inn and Draper exiting the driver side of the truck then entering the Motel. Goddard exited the passenger side and also entered the Motel. The video was recorded on October 13, 2022, at approximately 6:25 pm. The video also showed Draper paying for a room and being given a room key.[2] Further investigation led to a DNA report confirming Draper's DNA on the Remington 870 shotgun. Latent, fingerprints taken from the stolen truck were either of no value or did not match Draper or Goddard. Draper was a Person Prohibited from Possessing Firearms due to his extensive felony history including two prior violent felony convictions and 14 prior nonviolent felony convictions. Due to his criminal history, he faced 10 years minimum mandatory sentence on each of the PFBPP charge. He was also eligible to be sentenced as a habitual offender due to his criminal history.

---

[2] *Affidavit of Probable cause DK Item # 1*

Had the State pursued a motion to declare Draper a habitual offender he faced the possibility of a sentence of life in prison.

Prior to the matter being indicted the prosecutor made a plea offer to Draper and stated that the plea would only be available pre-indictment. Draper accepted the plea, after discussing it and the discovery provided by the State with his attorney.

## DRAPER'S CONTENTIONS

In his Motion for Postconviction Relief Draper raises the following grounds for relief:

| | |
|---|---|
| Ground One: | Ineffective assistance of counsel<br>I asked for a copy of my discovery 3# different times', and I still don't have one |
| Ground Two: | No Forensics report.<br>I asked 3 time (sic) for a Forensics report that my counsel said the State had never got that report. And still don't have one. |
| Ground Three: | I was showed no kinda (sic) Evidence<br><br>I wrote the courts about all of this and asked for any kinda (sic) help and never got anything back. |
| Ground Four: | I was showed (sic) no kinda (sic) evidence<br>I wrote to the courts about all of this and asked for any kinda (sic) help and never got anything back<br>Stephanie Blaisdell told me to take the plea, or I would end up with a life sentence if I went to trial. I even told the Judge I feel I was being force (sic) to take this plea. or I would end up with life if I didn't take it that's what I was told by Stephanie. |

## DISCUSSION

Under Delaware law, the Court must first determine whether Draper has met the procedural requirements of Superior Court Criminal Rule 61(i) before it can

8

consider the merits of the postconviction relief claim.[3] Under Rule 61, postconviction claims for relief must be brought within one year of the conviction becoming final. [4] Draper's motion was filed in a timely fashion; thus the bar of Rule 61(i)(1) does not apply to the Motion. As this is Draper's initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

None of Draper's claims were raised previously at his plea, sentencing, or on direct appeal. Consequently, they are barred under Superior Court Criminal Rule 61(i)(3) unless he demonstrates: (1) cause for relief from the procedural default; and (2) prejudice from a violation of the movant's rights. [5] The bars to relief are inapplicable to a jurisdictional challenge or "to a claim that satisfies the pleading requirements of subparagraph (2)(i) or (2)(ii) of subdivision (d) of this rule.[6] To meet the requirements of Rule 61 (d)(2) a defendant must plead with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted [7] or that he pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States or Delaware Supreme Courts, applies to the defendant's case rendering the conviction invalid.[8] Draper's motion pleads neither requirement of Rule 61(d)(2).

Each of Draper's grounds for relief are to some extent premised on allegations of ineffective assistance of counsel. Therefore, Draper has alleged sufficient cause for not having asserted these grounds for relief at trial and on direct appeal. Draper's

---

[3] *Bailey v. State*, 588 A,2d 1121, 1127 (Del. 1991)
[4] Super. Ct. Crim. R. 61(i)(1)
[5] Super. Ct. Crim. R. 61(i)(3).
[6] Super. Ct. Crim R. 61(i)(5)
[7] Super. Ct. Crim. R. 61(d)(2)(i)
[8] Super. Ct. Crim. R. 61(d)(2)(ii)

ineffective assistance of counsel claims are not subject to the procedural default rule, in part, because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal. For this reason, many defendants, including Draper, allege ineffective assistance of counsel in order to overcome the procedural default. "However, this path creates confusion if the defendant does not understand that the test for ineffective assistance of counsel and the test for cause and prejudice are distinct, albeit similar, standards."[9] The United States Supreme Court has held that:

> [i]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance;' [i]neffective assistance of counsel then is cause for a procedural default.[10]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark. Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two-part analysis enunciated in *Strickland v. Washington*[11] and adopted by the Delaware Supreme Court in *Albury v. State*.[12]

In the context of a guilty plea challenge, *Strickland* requires a defendant show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that counsel's actions were so prejudicial to him tin that there is a reasonable probability that, but for counsel's error, he would not have pled guilty and would have insisted on going to trial and that the result of a trial would have been his

---

[9] *State v. Gattis*, 1995 WL 790961 (Del. Super.).
[10] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).
[11] 466 U.S. 668 (1984).
[12] 551 A.2d 53, 58 (Del. 1988).

acquittal.[13] The failure to establish that a defendant would not have pled guilty and would have proceeded to trial is sufficient cause for denial of relief.[14] In addition, Delaware Courts have consistently held that in setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[15] When examining the representation of counsel pursuant to the first prong of the *Strickland* test, there is a strong presumption that counsel's conduct was professionally reasonable.[16] This standard is highly demanding.[17] *Strickland* mandates that, when viewing counsel's representation, this Court must endeavor to "eliminate the distorting effects of hindsight."[18]

Following a complete review of the record in this matter, it is abundantly clear that Draper has failed to allege any facts sufficient to substantiate his claims that his attorney was ineffective. I find Trial Counsel's affidavit, in conjunction with the record, more credible that Draper's self-serving claims that his Counsel's representation was ineffective. Draper's Counsel clearly denied the allegations.

Draper was facing the possibility of 30 years minimum mandatory and a possible life sentence, had he been convicted on all counts. The sentence and plea were very reasonable under all the circumstances. Especially with the strong DNA and video evidence. Prior to the entry of the plea, Draper and his attorney discussed the case and the plea. The plea bargain was clearly advantageous to Draper. Counsel was successful in negotiating a beneficial plea bargain with the State. Counsel's

---

[13] *Strickland*, 466 U.S. at 687

[14] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997) (Citing *Albury v. State*, 551 A.2d 53, 60(Del.1988)) (citations omitted)

[15] *See e.g., Outten v. State,* 720 A.2d 547, 557 (Del. 1998) (citing *Boughner v. State,* 1995 WL 466465 at *1 (Del. Supr.))

[16] *Albury*, 551 A.2d at 59 (citing *Strickland*, 466 U.S. at 689)

[17] *Flamer v. State*, 585 A.2d 736, 754 (Del 1990) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986)).

[18] *Strickland*, 466 U.S. at 689

representation was certainly well within the range required by *Strickland*. Additionally, when Draper entered his plea, he stated he was satisfied with the Defense Counsel's performance. He is bound by his statement unless he presents clear and convincing evidence to the contrary.[19] Consequently, Draper has failed to establish that his Counsel's representation was ineffective under the *Strickland* test.

Even assuming, *arguendo,* that Counsel's representation of Draper was somehow deficient, Draper must satisfy the second prong of the *Strickland* test, prejudice. In setting forth a claim of ineffective assistance of counsel, a defendant must make concrete allegations of actual prejudice and substantiate them or risk dismissal.[20] In an attempt to show prejudice, Draper simply asserts that his Counsel was ineffective. Draper's Trial Counsel clearly denied all Draper's allegation and the records substantiate her. My review of the facts of the case leads me to conclude that Counsel's representation of Draper was well within the requirements of the Sixth Amendment and no prejudice has been demonstrated. His statements are insufficient to establish prejudice, particularly in light of the evidence against him. Therefore, I find Draper's grounds for relief meritless.

To the extent that Draper alleges his plea, in this case, was involuntary, the record contradicts such allegations. When addressing the question of whether a plea was constitutionally knowing and voluntary, the Court looks to a plea colloquy to determine if the waiver of constitutional rights was knowing and voluntary.[21] At the guilty-plea hearing, the Court asked Draper whether he understood the nature of the charges, the consequences of his pleading guilty, and whether he was voluntarily entering the plea. The Court asked Draper if he was in fact guilty of Possession of a

---

[19] *Mapp v. State*, 1994 WL 91264, at *2 (Del.Supr.) (citing *Sullivan v. State*, 636 A.2d 931, 937-938 (Del. 1994)).
[20] *Larson v. State*, 1995 WL 389718, at *2(Del.Supr.) (citing *Younger v. State,* 580 A.2d 552, 556 (Del. 1990)).
[21] *Godinez v. Moran*, 509 U.S. 389, 400 (1993).

Firearm by a Person Prohibited. The Court asked Draper if he understood he would waive his Constitutional rights if he entered the plea including the right to suppress evidence; if he understood each of the Constitutional rights listed on the Truth-in-Sentencing Guilty Plea Form ("Guilty Plea Form"); and whether he gave truthful answers to all the questions on the form. The Court asked Draper if he had discussed his plea and its consequences fully with his attorney. The Court also asked Draper if he was satisfied with this counsel's representation. Draper answered each of these questions affirmatively.[22] After Draper pled Guilty, he asked the Court why he was getting 10 years in jail since he was "never caught with the firearm" the following Colloquy then took place.

> THE COURT: Sir, do you want to -- I mean, you were offered a guilty plea and you -- I haven't sentenced you yet.
> Do you want to enter this plea or not? I'm not -- my job is not to make you, pressure you into doing one or the other. My job is to make sure you're doing the right thing for yourself and you're doing it knowingly and voluntarily.
> Are you pleading guilty?
> THE DEFENDANT: I was told if I don't take this plea, then I'm going to get 30 years.
> THE COURT: All right.
> Ms. Blaisdell, if you want to address what your conversations were with him and we'll take it from there. We'll be back once --
> MS. BLAISDELL: Your Honor, this is an early plea that was actually extended before the indictment was made on Monday. Mr. Welch is graciously kept it open so that he could consider doing the 10 years. However, once it is scheduled for case review and the fact that -- in light of the fact that it could be habitual, he would be going after as a habitual

---

[22] *State v Draper*, Del. Super., I.D. No. 2210012695 (March 9, 2023) Tr. 1-13

offender and that would make it 15 years on each of the charges for two separate firearms.

THE COURT: So then if he went to trial and lost, he would be facing 30 years minimum mandatory up to two life terms?

MS. BLAISDELL: Yes, Your Honor.

MR. WELCH: Yes, Your Honor.

His DNA was found on one of the firearms it turns out.

THE COURT: Okay.

So, sir, again, do you want to talk -- do you need more time to talk --

THE DEFENDANT: No. I'll take this. I'll take this.

THE COURT: Okay.

So you are guilty of this charge, sir?

THE DEFENDANT: Yeah.[23]

I find counsel's representation for more credible than Draper's self-serving allegations.

Furthermore, prior to entering his plea, Draper signed a Guilty Plea Form and Plea Agreement in his own handwriting. Draper's signature on the forms indicate that he understood the Constitutional rights he was relinquishing by pleading guilty and that he freely and voluntarily decided to plead guilty to the charges listed in the Plea Agreement. Draper is bound by the statements he made on the signed Guilty Plea Form unless he proves otherwise by clear and convincing evidence.[24] I confidently find that Draper entered his plea knowingly and voluntarily and that Draper's grounds for relief are completely meritless.

---

[23] *ID at 10 - 12*

[24] *Somerville v. State*, 703 A.2d 629, 632 (Del.1997)

**CONCLUSION**

I find that Draper's counsel represented him in a competent and effective manner as required by the standards set in *Strickland* and that Draper has failed to demonstrate any prejudice stemming from the representation. I also find that Draper's guilty plea was entered knowingly and voluntarily. I recommend that the Court ***deny*** Draper's Motion for Postconviction Relief as meritless.

<u>Andrea M. Freud</u>
Commissioner

AMF/pdb
oc:    Prothonotary
cc:    Resident Judge Jeffrey J Clark
        Stephen Welch, DAG
        Stephanie Blaisdell, Esq.
        Robert Draper, JTVCC